[No. B108082. Second Dist., Div. Seven. Oct. 22, 1997.]

NATIONAL PAINT & COATINGS ASSOCIATION, INC., et al.,
Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Thomas J. Graves, Haight, Brown & Bonesteel and Jeffrey B. Margulies for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Craig C. Thompson, Edward G. Weil and Susan S. Fiering, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

### NEAL, J.—

#### SUMMARY

Two paint manufacturers associations sued claiming that private citizen enforcement provisions of drinking water and toxic chemicals legislation violate constitutional separation of powers and due process principles. However, the associations pleaded no facts to show that private enforcement interferes with or impairs executive branch enforcement. Nor did they make out a violation of due process rights. The trial court properly dismissed the complaint.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and appellants, two associations of paint manufacturers, sued to invalidate the private enforcement provisions of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, §§ 25249.5-25249.13) (the Act). They contended that the Act, in authorizing suits by private citizens who have sustained no injury, violates the separation of powers doctrine under the California Constitution, and the due process clauses of the California and United States Constitutions. They also challenged the constitutionality of the Unfair Competition Act (UCA), which authorizes private citizens, acting for the interest of the general public, to sue for injunctions against unlawful, unfair, or fraudulent business practices.[1] Plaintiffs allege that suits under the Act frequently include claims under UCA as well.

Appellant National Paint & Coatings Association, Inc., is a nationwide nonprofit association with 500 members which produce 75 percent of the nation's paint and related products. Appellant California Paint Council is an association of California paint manufacturers.

California voters enacted the Act in 1986 by passing the ballot initiative designated Proposition 65.

The Act's substantive provisions are summarized as follows:

—The Governor is required to develop a list of chemicals known to cause cancer or reproductive toxicity. (Health & Saf. Code, § 25249.8.)

—Listed chemicals may not be discharged into any source of drinking water. (Health & Saf. Code, § 25249.5.)

---

[1]On appeal, appellants do not challenge dismissal of their UCA claims.

—Discharges of insignificant amounts of chemicals are permissible. (Health & Saf. Code, § 25249.9.)

—Persons doing business shall not intentionally expose individuals to the listed chemicals without first giving a clear and reasonable warning. (Health & Saf. Code, § 25249.6.)

—Chemicals shown to pose no significant risk require no warning. (Health & Saf. Code, § 25249.10.)

The Act is enforced as follows:

—Violations may be enjoined, or punished by a civil penalty of up to $2,500 per day. (Health & Saf. Code, § 25249.7, subds. (a), (b).)

—Suit may be brought by the Attorney General, the district attorneys and prosecutors of the larger cities, and certain other municipal lawyers. (Health & Saf. Code, § 25249.7, subd. (c).)

—"[A]ny person in the public interest" may sue 60 days or more after giving notice to the Attorney General and the local prosecutor and city attorney, if none of these authorities have commenced a suit. Citizens bringing such suits need not plead a private injury and instead are deemed to sue "in the public interest." (Health & Saf. Code, § 25249.7, subd. (d).)

Appellants' complaint in summary contended that private citizen enforcement of the Act is inconsistent with excutive branch enforcement. Thus the complaint alleged that private actions have been undertaken on grounds inconsistent with the Attorney General's interpretations of the Act. Private plaintiffs have advocated warnings, exposure calculations, remedies and penalties different from those advocated by the Attorney General, and have on occasion obtained relief in addition to that sought by the Attorney General. Appellants alleged these inconsistencies have arisen because the Attorney General is unable to supervise or control some private citizen claims, including suits not joined in by the Attorney General, and because some private citizen claims settle after a 60-day notice but before suit is filed. Appellants also alleged that some 60-day notices provide the Attorney General insufficient information to determine whether to sue.

Appellants' complaint was not verified. Appellants did not affirmatively assert the truth of the matters pleaded, but instead alleged they were "informed and believed" that the crucial allegations were true.

Further, the complaint did not identify specific, concrete instances where public and private enforcers of the Act have advocated inconsistent warnings

or remedies, or where the Attorney General's ability to supervise and control enforcement of the Act has been subverted by private enforcement. Indeed, the complaint did not even *allege* that inconsistent warnings, interpretations, remedies, or penalties were in fact adopted in any actual case. Instead, the complaint simply alleged that private enforcers have "*pursued*" and "*asserted*" positions inconsistent with the Attorney General.

The only factually specific matter pleaded appeared in a series of exhibits attached to the complaint. These included several newspaper pieces and memoranda. Not included, however, were any court orders or decrees demonstrating even a single instance of actual conflicting enforcement of the Act.

The exhibits did include materials relating to three different private enforcement lawsuits under the Act. These included:

—A memorandum of points and authorities filed by the Attorney General in People v. Aermotor Pumps (Super. Ct. Alameda County, No. 733686-7). In this memorandum the Attorney General argues *in support of* the right of private plaintiffs to participate as plaintiffs. No orders or documents are attached with the complaint which show that inconsistent rulings or other events detrimental to the Act's policies or the Attorney General's enforcement activities occurred in this suit.

—Disjointed excerpts from a reporter's transcript of a hearing June 3, 1994, in People v. The Sherwin-Williams Co. (Super. Ct. S.F. County, 1994, No. 952-433). While it appears the hearing involved an objection by a private plaintiff to a settlement proposed between the Attorney General and the defendant, the incomplete transcript makes it impossible to discern how the hearing concluded. No other materials or facts were supplied or pleaded to show that, at the end of the day, the Act's policies or the Attorney General's enforcement was impeded.

—An amicus curiae brief filed in May 1995 by the Attorney General in As You Sow v. Ashland Chemical, Inc. (Super. Ct. S.F. County, 1995, No. 966954) arguing in support of defendant's demurrer and asserting that the private plaintiff's notice of violation failed to provide the Attorney General with sufficient information about the alleged violation.

Also attached with the complaint were news reports showing this suit was settled in April 1996 with substantial payments to the private plaintiff. But no facts were pleaded, or referred to in other exhibits, to show what happened between May 1995 and April 1996, or to show that inconsistent warnings, remedies or penalties resulted or that the Attorney General's enforcement of the Act was impaired.

In short, no facts appeared, either in the complaint itself, or in its exhibits, to support appellants' core allegations.

Elsewhere, the complaint contained allegations contradicting appellants' claim that the Attorney General does not supervise or control private suits. Thus it was alleged that the Attorney General routinely cooperates with private plaintiffs in suits under the Act, and that the Attorney General influences private suits through amicus curiae briefs or through intervention.

Another exhibit to the complaint, a March 1992 memorandum prepared by the Attorney General's Office concerning "Proposition 65 Enforcement Activities and Policies," likewise contradicted the claimed detrimental effects of private enforcement activity. The memorandum neither stated nor implied that private enforcement of the Act undermines or impairs the Act or the Attorney General's efforts to enforce it. In a heading titled "Private Enforcement" the memo stated, in pertinent part: "Since the statute took effect, we have received dozens of 60 day notices, most of which have not resulted in litigation by either public prosecutors or private citizens. Where a private party does pursue a suit, we generally follow its progress, and have in some instances filed briefs as *amicus curiae*, where an issue of overall importance to implementation of the statute was being raised. Under appropriate circumstances, we could seek to intervene in such a case, or file a separate suit, but we have not done so."

The memo also noted that the Attorney General reviews some private action settlements, since they potentially bind the public authorities. In some instances he sends a letter approving the settlement in principle. In some instances he has concluded an action should not be filed and has declined invitations from prospective defendants to sue anyway in order to bar private claims: "We have not filed actions under those circumstances. While we may encourage a private party not to sue, the citizen suit provision gives that party the right to differ with our judgment, or to supplement our limited resources."

The memo further stated: "Where a private party is pursuing a claim against a company also being sued by the Attorney General, however, the courts have authority to place a stay or other limitation on the private suit under appropriate circumstances.

"Other private parties have been cooperative about pursuing matters in coordination with the Attorney General, and we have had little difficulty in pursuing litigation and achieving settlement in such instances."

The Attorney General defended the state in the present action in the trial court and is defending in this court. At no time during this case has he

asserted that private enforcement impairs or undermines his enforcement of the Act. Instead he has taken the contrary position.

The trial court sustained the Attorney General's demurrer, finding there was no constitutional basis for challenge to the Act. The appellants acknowledged on the record that they could not improve their complaint by amendment, and the trial court dismissed the action.

This appeal followed.

## DISCUSSION

The Act challenged in this case was enacted by a citizen initiative.

The initiative power is created by article II, section 8 of the California Constitution, as follows: "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them."

The initiative procedure is an exception to our tripartite governmental framework vesting the legislative powers in the Legislature. (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 120, p. 175.) Thus article IV, section 1 of the California Constitution provides: "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum."

■ The constitutional provision for initiatives rests on the theory that all power of government ultimately resides in the people. The initiative is thus a power *reserved* to people, not *granted* to them. (*Associated Home Builders, etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) "[I]t [is] 'the duty of courts to jealously guard this right of the people' [citation] . . . , 'one of the most precious rights of our democratic process.' [Citation.] '[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' [Citations.]" (*Ibid.*)

The California Constitution does not specify, as does the United States *Constitution,* that the state's judicial power extends only to "cases and controversies." Article VI, section 1 of the California Constitution provides simply that the state's judicial power is vested in the Supreme Court, Courts

of Appeal, superior courts, and municipal courts. Article VI, section 10 provides that superior courts shall have jurisdiction of "all causes" except those given by statute to other trial courts.

Article III, section 3 of the California Constitution states: "The powers of state government are legislative, executive and judicial. Persons charged with exercise of one power may not exercise either of the others except as permitted by this Constitution."

Article I, section 24 of the California Constitution provides in part: "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."

1. *The Act's grant of standing to sue to "any person in the public interest" is not unconstitutional.*

■ Appellants argue that the Act's grant of authority to "any person" to sue in the public interest violates a constitutional requirement that only persons with "standing to sue" may initiate an action. They cite. *Lujan* v. *Defenders of Wildlife* (1992) 504 U.S. 555 [112 S.Ct. 2130, 119 L.Ed.2d 351], one of a series of federal cases holding that federal court jurisdiction is constitutionally limited to "cases and controversies," and that a plaintiff to make out a "case and controversy" must plead and prove standing, by showing a concrete and particularized injury-in-fact, traceable to the action of the defendant, and likely to be redressed by a favorable court decision. (*Id.* at pp. 560-561 [112 S.Ct. at pp. 2136-2137].)

This argument is not supported by any citation either to the California Constitution or to California decisional law interpreting that Constitution. Our state Constitution contains no "case or controversy" requirement. The substantial body of federal cases interpreting standing under the United States Constitution does not purport to impose the same requirement in cases arising under the California Constitution. The California Constitution specifically provides (art. I, § 24), that California constitutional rights do not depend on the United States Constitution. Appellants cite no California cases holding that concrete injury and redressability are essential prerequisites to justiciability in California, or that a "citizen suit right" such as conferred by the Act is unconstitutional.

On the contrary, California authority *supports* the conclusion that a suit by a citizen in the undifferentiated public interest is "justiciable," or appropriate for decision in a California court. In *White* v. *Davis* (1975) 13 Cal.3d 757, 762 [120 Cal.Rptr. 94, 533 P.2d 222], our Supreme Court rejected a standing

challenge to Code of Civil Procedure section 526a. That section allows a taxpayer to sue to challenge an illegal or wasteful expenditure of public funds. Plaintiff in *White*, a professor at University of California at Los Angeles, sued challenging the Los Angeles Police Department's use of secret informers posing as students and gathering intelligence about university classes and meetings. In rejecting the standing challenge, the court cited its early decisions involving police "dragnet" roadblocks and warrantless surveillance of private residences, which upheld section 526a's "general citizen remedy" for controlling illegal governmental activity. (13 Cal.3d at p. 763.) The court distinguished federal cases relied on by defendants because they ". . . rested on a restrictive federal doctrine of justiciability which does not apply to taxpayer suits in California." (*Ibid.*)

The interests of individual citizens in assuring that carcinogenic chemicals are not placed in their drinking water and that appropriate warnings are given of exposure to such chemicals, appear to us to be at least as substantial as the interest in preventing certain police conduct in the *White* line of cases, and every bit as appropriate for vindication by a "general citizen" right to sue. Few if any commodities are more essential to life or more certain to be consumed by every citizen than drinking water.

The Act does not violate the California Constitution in enabling citizens to sue in the public interest.

2. *The Act does not violate the constitutional separation of powers doctrine by impairing the executive's performance of its duties or forcing delegation of executive branch duties without sufficient standards.*

■ Under federal constitutional law there are three "strands" of separation of powers analysis. (*Loving* v. *United States* (1996) 517 U.S. 748, __ [116 S.Ct. 1737, 1743, 135 L.Ed.2d 36].) The court explained: "[I]t remains a basic principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another. [Citations.] Even when a branch does not arrogate power to itself, moreover, the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties. [Citations.] . . . [¶] Another strand of our separation-of-powers jurisprudence, the delegation doctrine has developed to prevent Congress from forsaking its duties." (*Ibid.*)

California separation of powers analysis essentially follows the federal framework.

■ Appellants here invoke only the latter two "strands," contending that the Act impairs the executive branch in performing constitutional duties, or

forces it to delegate those duties without sufficient safeguards to prevent abuse. The latter species of concerns is illustrated by *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 11-12 [97 Cal.Rptr. 431], in which the Court of Appeal invalidated, invoking separation of powers doctrine, the legislative grant "to timber owners and operators the exclusive power to formulate forest practice rules which, when adopted, have the force and effect of law." (*Id.* at p. 10.) This delegation of legislative power, without circumscribing standards or guidelines, was held to violate the Constitution.

The difficulty with appellants' case is that appellants failed to plead any facts to demonstrate either impairment of executive power or unguided delegation of power. The complaint is virtually devoid of any specific, factual allegations to show that the executive's enforcement of the Act has been impeded in any way, or that the empowerment of private citizens to sue has in any fashion undermined the enforcement or objectives of the Act, or that private suits have resulted in unguided application of the Act.

Further, the materials attached with the complaint quite strongly disproved appellants' claims. The Attorney General, the executive officer whose power appellants claim has been impaired, attested in his memorandum, attached with the complaint, to the generally satisfactory experience with the private enforcement mechanism.

Appellants claimed that when public authorities don't sue, they are foreclosed from supervising or controlling private enforcement actions. However, allegations elsewhere tended to disprove this claim. Appellants acknowledged that the private plaintiff *must* give notice to the public authorities before suing. Thus in every instance, the authorities will be *aware* of the private claimant.

Appellants affirmatively alleged that the Attorney General influences private suits through amicus curiae briefs or intervention, and the Attorney General's memorandum confirmed that this is true. The memorandum confirmed that the Attorney General "generally follows the progress" of the private cases and is prepared to intervene, or file a separate action, if that is warranted. The memorandum further noted the Attorney General's ability to obtain a stay of a private case that is being prosecuted "parallel" to the Attorney General's suit. The memorandum also noted the Attorney General's knowledge of, and participation in shaping, settlements of some private enforcement actions. Most significantly, the memorandum did not identify a single instance where the Attorney General found it necessary to intervene or seek a stay in order to prevent an abuse of the private enforcement mechanism.

The Attorney General has appeared in this action as counsel for the State of California, at both the trial and appellate level, and has never remotely suggested that he believes the private enforcement mechanism in any way impairs his ability to supervise or control enforcement of the Act.

Appellants also complained that private actions have been initiated in cases where the Attorney General, in the exercise of prosecutorial discretion, determined that the alleged violations did not warrant prosecution. Appellants, however, supplied no facts to show any instance where such a private action impaired the Attorney General's enforcement activities, or was in any way inconsistent with the policies of the Act. Further, it is clear that the Attorney General's decision not to sue will in some, perhaps many, instances, be driven by limits on available resources, and thus the private action actually helps the Attorney General by "supplement[ing] our limited resources."

Appellants also claimed that persons bringing private enforcement suits under the Act have "contended for warnings, remedies, and penalties inconsistent with the Attorney General's interpretation of the Act." However, appellants cited no specific instances. In any event, we do not see a risk of any serious undermining of the Attorney General's enforcement efforts or the policy of the Act because of possible differing contentions concerning warnings or remedies. If two different warnings are advocated, it matters little which is adopted, provided the statutory mandate of a "clear and reasonable" warning is complied with. If a private party obtains a penalty higher than that sought by the Attorney General, enforcement of the Act is enhanced.

In summary, the complaint simply did not allege facts sufficient to show any significant likelihood that the private enforcement provisions undermine the executive or lead to an improper delegation of authority.

3. *The Act does not violate federal or state due process guaranties.*

Appellants argue that the Act violates the federal and state due process protections by entrusting prosecutorial power to private citizens with a financial interest in successful prosecution of the claim. Prosecutors have an obligation to "seek justice and to develop a full and fair record." Appellants argue that the financial interest of a private plaintiff may conflict with the prosecutorial duty to "seek justice." Appellants rely on *Marshall* v. *Jerrico, Inc.* (1980) 446 U.S. 238 [100 S.Ct. 1610, 64 L.Ed.2d 182] and *People* ex rel. *Clancy* v. *Superior Court* (1985) 39 Cal.3d 740 [218 Cal.Rptr. 24, 705 P.2d 347].

The federal court of appeals in *U.S.* ex rel. *Kelly* v. *Boeing Co.* (9th Cir. 1993) 9 F.3d 743 rejected a nearly identical due process challenge to the federal False Claims Act (31 U.S.C. §§ 3729-3731) (FCA), which empowers both the United States Attorney General and private citizens to sue challenging government fraud. The court rejected Boeing's argument that FCA private enforcement provisions violated due process under *Marshall* v. *Jerrico*. The court reasoned that in an adversary system prosecutors need not and cannot be entirely neutral and detached; that lower levels of prosecutorial neutrality are permissible in civil as opposed to criminal prosecutions; that the private attorney general provisions in the FCA complement rather than conflict with public enforcement; and that private FCA plaintiffs do not sue in the name of the state and do not wield the state's coercive power.

We find *Kelly* persuasive and apply its reasoning here. Both appellants' federal and state due process claims lack merit.

### DISPOSITION

The judgment of the trial court is affirmed. Respondent shall recover its costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied November 20, 1997, and appellants' petition for review by the Supreme Court was denied January 14, 1998. Mosk, J., was of the opinion that the petition should be granted.