Filed 6/30/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA BUSINESS & INDUSTRIAL ALLIANCE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> XAVIER BECERRA, as Attorney General, etc., <br><br> Defendant and Respondent. | G059561 <br><br> (Super. Ct. No. 30-2018-01035180) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Peter J. Wilson, Judge.  Affirmed.

Epstein Becker & Green, Richard J. Frey, Robert H. Pepple, David M. Prager, Brock J. Seraphin, Devin L. Lindsay; Nixon Peabody and Richard J. Frey for Plaintiff and Appellant.

Eimer Stahl, Robert E. Dunn, John D Tripoli, and Collin J. Vierra for Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Plaintiff and Appellant.

LevatoLaw and Ronald C. Cohen for California Business Roundtable as Amicus Curiae on behalf of Plaintiff and Appellant.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Paul Stein and Aaron Jones, Deputy Attorneys General, for Defendant and Respondent.

*       *       *

Plaintiff California Business & Industrial Alliance appeals from a judgment of dismissal entered after the trial court sustained the demurrer of defendant Xavier Becerra, in his official capacity as Attorney General of the State of California, without leave to amend. Plaintiff, a lobbying group for small and midsized businesses in California, filed this action seeking a judicial declaration that the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.), is unconstitutional under various theories and an injunction forbidding defendant from implementing or enforcing PAGA. PAGA allows California employees to sue their employers and pursue civil penalties on behalf of the state for violations relating not only to themselves, but also to other California employees of the same employer.

On appeal, plaintiff asserts a single theory: that PAGA violates California's separation of powers doctrine by allowing private citizens to seek civil penalties on the state's behalf without the executive branch exercising sufficient prosecutorial discretion. We reject this theory for two reasons. First, our Supreme Court held in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), that "PAGA does not violate the principle of separation of powers under the California Constitution." (*Id*. at p. 360.) Despite plaintiff's allegation in its complaint that *Iskanian* is "incorrect," and its arguments before us that this statement is either "dictum" or is limited to a different type of separation of powers challenge, *Iskanian* is directly on point and controlling, and we have no authority to defy its mandate.

2

Second, even if *Iskanian* did not require this result, we would reach it anyway through application of California's preexisting separation of powers doctrine. PAGA is not meaningfully distinguishable from comparable qui tam statutes outside the employment context, including the California False Claims Act (Gov. Code, § 12650 et seq.) the Insurance Frauds Prevention Act (Ins. Code, § 1871 et seq.) the Safe Drinking Water and Toxic Enforcement Act of 1986, colloquially known as Proposition 65 (Health & Saf. Code § 25249.5 et seq.) and many others. Plaintiff and its supporting amici fail to produce even one single case in which any of these many statutes has been held to violate California's separation of powers doctrine. Nor do they identify any sufficiently significant distinctions between those statutes and PAGA, or any other compelling reason for us to break new ground.

Accordingly, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

Plaintiff California Business & Industrial Alliance is a lobbying group, organized in Washington, D.C., which represents small and midsized businesses in California. While plaintiff's general purpose is promoting the interests of these businesses, its specific animating purpose is "accomplishing the repeal or reform of PAGA." In service of that goal, plaintiff sued defendant Xavier Becerra, then California's Attorney General, in his official capacity, seeking declaratory and injunctive relief. Plaintiff sought a judicial declaration that PAGA was unconstitutional and injunctive relief barring defendant from implementing or enforcing PAGA.

Plaintiff's first amended complaint (the complaint)[1] contains extensive allegations regarding perceived defects in PAGA, both legal and practical. The

---

[1] Defendant demurred to plaintiff's original complaint, which resulted in the filing of the first amended complaint.

complaint begins with a recitation of the background legal principles and sources of authority. In pure legal terms, plaintiff alleges PAGA violates the Eighth Amendment's prohibition against excessive fines, plaintiff's members' Fifth and Fourteenth Amendment rights to due process, California's separation of powers doctrine, and the Fourteenth Amendment's guarantee of equal protection. On a practical level, plaintiff contends the various provisions of the California Labor Code that are enforceable through PAGA are "unclear, cumbersome, counterintuitive, impossible to follow, or all of the foregoing." As an example, plaintiff complains that compliance with California's meal period requirements is "impracticable," "preposterous," and "hopeless." Plaintiff also alleges California's wage statement requirements have "spawned countless lawsuits alleging hyper-technical violations that have required employers to incur significant legal expenses in their defense as well as large settlements and damage awards in numerous cases." Plaintiff summarizes California's labor laws as "a daunting and confusing web of obligations for employers, robust and generous remedies for employees, and a framework that encourages vigorous enforcement through private rights of action."

Plaintiff's complaint next describes the history of PAGA, including certain portions of its legislative history, the coalition of "labor union and applicant attorney special interest groups" that supported it, and the identity of various opponents of the bill.[2] Plaintiff then sets forth the nuts and bolts of PAGA, describing the various categories of violations that can be asserted through PAGA, the resulting civil penalties, various procedural differences between PAGA and class action lawsuits, and the rules for providing notice of a PAGA action to the state. Plaintiff's complaint also discusses various cases interpreting and applying PAGA, including a particularly lengthy discussion of the Supreme Court's decision in *Iskanian*. Lastly, before setting forth its causes of action, plaintiff complains at length about practical consequences of PAGA that

[2] In this section, plaintiff also discusses a subsequent amendment to PAGA which is irrelevant to the issues on this appeal.

4

plaintiff deems unfair, including a hypothetical calculation of very high civil penalties resulting from a PAGA enforcement action brought based upon a very modest underpayment of wages, various allegations of unethical or undesirable tactics by plaintiffs' attorneys in PAGA actions, and charts naming law firms which have frequently filed PAGA notices with the state and listing various nonprofits, charities, hospitals, and similar entities which have been "targeted" by PAGA.

The complaint contains five causes of action, only one of which is relevant here: plaintiff's cause of action for violation of California's separation of powers doctrine. In connection with this cause of action, plaintiff alleges PAGA's provisions "as a whole, viewed from a realistic and practical perspective, operate to arrogate, defeat, and/or materially impair, the exercise of the core powers and/or constitutional functions" of the executive and judicial branches of California's state government. Plaintiff also specifically alleges that this challenge to PAGA is not barred by *Iskanian* for various reasons.

Defendant demurred, arguing three of plaintiff's five causes of action (relating to plaintiff's separation of powers and due process arguments) fail as a matter of law. The trial court sustained the demurrer without leave to amend, concluding plaintiff's separation of powers claim was barred by *Iskanian* and plaintiff's due process claims failed in view of the rights of any PAGA defendant to notice and a hearing. Plaintiff's final remaining causes of action (relating to issues irrelevant to this appeal) were disposed of via summary judgment. All of plaintiff's claims having thus been defeated, the trial court entered judgment for defendant. Defendant timely appealed.

DISCUSSION

On appeal, plaintiff challenges only the trial court's ruling on defendant's demurrer to plaintiff's cause of action relating to California's separation of powers doctrine, and only as to the executive branch, not the judicial branch. Further, plaintiff

5

argues solely that the demurrer should not have been sustained, and does not contend leave to amend should have been granted. This limits the scope of our analysis to a single issue of law: whether PAGA violates California's separation of powers doctrine by depriving the executive branch of control over enforcement of California's labor laws. We conclude the Supreme Court has already decided this issue against plaintiff's position in *Iskanian*, *supra*, 59 Cal.4th 348. Moreover, even if *Iskanian* were not applicable, we would nevertheless conclude PAGA does not violate California's separation of powers doctrine.

### 1. *PAGA's History and Structure*

In 2001, the California Assembly Committee on Labor and Employment held hearings regarding the effectiveness of the enforcement of wage and hour laws by the Department of Industrial Relations (DIR) in enforcing California's wage and hour laws. (Assem. Com. on Labor and Employment, Analysis of Sen. Bill No. 796 (Reg. Sess. 2003-2004) as amended July 2, 2003, p. 3.) The committee found that, despite the DIR's status as the single largest state labor law enforcement organization in the United States, it was failing to achieve effective enforcement of California's labor laws. (*Ibid.*) "Estimates of the size [of] California's 'underground economy'—businesses operating outside the state's tax and licensing requirements—ranged from 60 to 140 billion dollars a year, representing a tax loss to the state of three to six billion dollars annually. Further, a U.S. Department of Labor study of the garment industry in Los Angeles, which employs over 100,000 workers, estimated the existence of over 33,000 serious and ongoing wage violations by the city's garment industry employers, but the DIR was issuing fewer than 100 wage citations per year for all industries throughout the state." (*Ibid.*)

Animated by these findings, the Legislature enacted PAGA, which allowed current and former employees to bring actions against their employers for civil penalties

on behalf of the state, effectively "deputizing employees to prosecute Labor Code violations on the state's behalf." (*Iskanian*, *supra*, 59 Cal.4th at p. 360.)  The "'statute requires the employee to give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency, and the notice must describe facts and theories supporting the violation.'" (*Id.* at p. 380.)  The agency has 60 days to decide whether to investigate. (Lab. Code, § 2699.3, subd. (a)(2)(A).)  If the agency fails to respond to the notice or declines to investigate, the employee may immediately commence a civil action. (*Ibid.*)  If the agency chooses to investigate, it must decide whether to issue a citation within 120 days. (*Id.*, subd. (a)(2)(B).)  If the agency decides not to issue a citation or provides no notice of its decision within the time period, the employee may immediately commence a civil action. (*Ibid.*)  Having commenced the action, if the employee proves a violation of the Labor Code, the employer must pay a civil penalty for each employee, and each pay period affected by the violation. (Lab. Code, § 2699, subd. (f).)  The penalty is divided between the affected employees, who receive 25 percent of the penalty amount, and the state, which receives 75 percent. (*Id.*, subd. (i).)

PAGA actions are qui tam actions.  A qui tam action is "'[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.'" (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 538 [quoting Black's Law Dict. (7th ed.1999) p. 1262, col. 1].)  Qui tam actions predate the founding of the United States by a considerable margin, originating in England "around the end of the 13th century, when private individuals who had suffered injury began bringing actions in the royal courts on both their own and the Crown's behalf." (*Vermont Agency of Nat. Resources v. U.S.* (2000) 529 U.S. 765, 774.)

Perhaps the most well-known qui tam statute is the federal False Claims Act (31 U.S.C. § 3729 et seq.), which "was originally adopted following a series of

7

sensational congressional investigations into the sale of provisions and munitions to the War Department" during the American Civil War. (*United States. v. McNinch* (1958) 356 U.S. 595, 599.) California has its own False Claims Act, which, like the federal False Claims Act, allows qui tam plaintiffs to sue government contractors who submit false claims to the government for payment. (Gov. Code, § 12650 et seq.) In addition to PAGA and the False Claims Act, California also has numerous other qui tam statutes, including the Insurance Frauds Prevention Act (Ins. Code, § 1871 et seq.), Proposition 65, and many others.

### 2. Iskanian *Bars Plaintiff's Claim*

In *Iskanian*, an employee sued his employer for various violations of the Labor Code. (*Iskanian*, *supra*, 59 Cal.4th at p. 361.) The employee sought to bring a class action on behalf of similarly situated employees, and to assert a qui tam action under PAGA. (*Iskanian*, at p. 361.) In response, the employer sought to compel arbitration, citing its arbitration agreement with the plaintiff, and arguing that the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 preempted any contrary California law preventing arbitration of employment class action litigation or PAGA claims.[3] (*Iskanian*, at p. 361.)

Before the Supreme Court, the employer raised another argument: that "PAGA violates the principle of separation of powers under the California Constitution. (*Iskanian*, *supra*, 59 Cal.4th at p. 389.) More specifically, the employer argued PAGA violated California's separation of powers doctrine "by authorizing financially interested

[3] After oral argument, the United States Supreme Court decided *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [2022 U.S. Lexis 2940], which the Attorney General cited to us under California Rules of Court, rule 8.254. We considered the case, which abrogates in part the California Supreme Court's holding in *Iskanian* on arbitrability of PAGA claims. We conclude it has no material impact on our decision, as it does not address the separation of powers issue.

8

private citizens to prosecute claims on the state's behalf without government supervision." (*Iskanian*, at pp. 389-390.) The employer cited *County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35, which was, in turn, based on *People ex rel. Clancy v. Superior Court* (1985) 39 Cal.3d 740. Both cases involved the permissibility of contingent fee agreements between public entities and attorneys prosecuting public nuisance cases, and the degree of supervision by "neutral" government attorneys necessary in such cases.

The Supreme Court rejected this argument, pointing out that its analysis in those cases was not applicable in the qui tam context, and that "our case law contains no indication that the enactment of qui tam statutes is anything but a legitimate exercise of legislative authority." (*Iskanian*, *supra*, 59 Cal.4th at p. 390.) The Supreme Court also specifically held that "PAGA does not violate the principle of separation of powers under the California Constitution." (*Id.* at p. 360.)

Plaintiff raises several objections to the trial court's application of *Iskanian*'s holding in this case. First, plaintiff argues *Iskanian*'s separation of powers holding is "arguably nothing more than dictum." Plaintiff is mistaken. Dictum is "'[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive).'" (*People v. Vang* (2011) 52 Cal.4th 1038, 1047 fn. 3 [citing Black's Law Dict. (9th ed. 2009) p. 1177, col. 2].)

The employee in *Iskanian* argued the employer had not properly raised the separation of powers argument by failing to mention it in its answer to the employee's petition for review. (*Iskanian*, *supra*, 59 Cal.4th at p. 389.) However, the Supreme Court rejected this argument stating, "[W]e will decide the merits of this question." (*Ibid*.) The Supreme Court's resolution of the question also determined the outcome of the case. Had the Supreme Court decided PAGA violated California's separation of powers doctrine, it would not have instructed the trial court to consider on remand whether to bifurcate the

9

case between arbitrable (Labor Code violation) and nonarbitrable (PAGA) claims. (*Iskanian*, at pp. 391-392.) Thus, the Supreme Court's holding is precedential, not dictum, and we are bound to follow it.

Second, plaintiff argues *Iskanian* is distinguishable on procedural grounds—namely that *Iskanian* arose from an attempt to enforce an arbitration agreement and PAGA waiver, while the present case arises from a demurrer to a declaratory relief action directly challenging PAGA's constitutionality. On the question this case presents to us, this procedural distinction has no effect. The question presented is the same: Does PAGA violate California's separation of powers doctrine? The standard of review for this purely legal question is the same as well: de novo review. Plaintiff's argument that its complaint includes an as-applied challenge to PAGA, which could trigger factual analysis and potentially a different standard, also lacks merit. Plaintiff's separation of powers challenge to PAGA is premised on legislative overreach, and the Legislature has done nothing affecting PAGA's enforcement other than pass laws.

Lastly, plaintiff argues *Iskanian* only stands for a narrower proposition in the separation of powers context: the Supreme Court's rejection of the employer's argument, which in turn was based on the public nuisance cases *County of Santa Clara* and *Clancy*. Plaintiff argues the separation of powers challenge in *Iskanian* was, by virtue of being based on these cases, directed at legislative intrusions on *judicial* power, not executive power, and is therefore not relevant here.

It is true, as plaintiff points out, that "'cases are not authority for propositions that are not considered.'" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 85 fn. 4.) And "'[it] is axiomatic that an unnecessarily broad holding is "informed and limited by the fact[s]" of the case in which it is articulated.'" (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1153.) But the argument considered and rejected by the Supreme Court in *Iskanian* is not as far removed from plaintiff's argument as plaintiff suggests.

10

Here, plaintiff argues PAGA "divests the executive branch of: (1) its prosecutorial discretion by authorizing PAGA plaintiffs to prosecute Labor Code violations the executive branch has never reviewed; and (2) any control over PAGA prosecutions or settlements, thereby usurping the executive branch's enforcement authority." In short, plaintiff contends PAGA is unconstitutional because it provides insufficient mechanisms for the executive branch to supervise PAGA plaintiffs. The Supreme Court in *Iskanian* rejected the argument that PAGA was unconstitutional because it "authoriz[es] financially interested private citizens to prosecute claims on the state's behalf without governmental supervision." (*Iskanian*, *supra*, 59 Cal.4th at pp. 389-390.) To be sure, the argument in *Iskanian* was couched somewhat different. It focused on prosecutorial neutrality, which is subtly distinct from prosecutorial discretion, and it appears to have involved little discussion of the executive branch's enforcement authority. But at its core, the basic idea is the same. Plaintiff, like the employer in *Iskanian*, argues the separation of powers requires greater governmental oversight over PAGA plaintiffs. The *Iskanian* court rejected that argument, and we are bound to do the same.

3. *PAGA Does Not Violate California's Separation of Powers Doctrine*

Even if we were not bound by *Iskanian*, we would reach the same result by application of California's separation of powers doctrine.

California's separation of powers doctrine prohibits the enactment of statutes that "as a whole, viewed from a realistic and practical perspective, operate to defeat or materially impair the executive branch's exercise of its constitutional functions." (*Marine Forests Society v. California Coastal Com*. (2005) 36 Cal.4th 1, 15.) At the same time, "the separation of powers doctrine does not create an absolute or rigid division of functions." (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1068.) And it ""'"does not mean that the three departments of our government are

11

not in many respects mutually dependent"' [citation], or that the actions of one branch may not significantly affect those of another branch. Indeed, upon reflection, the substantial interrelatedness of the three branches' actions is apparent and commonplace: the judiciary passes upon the constitutional validity of legislative and executive actions, the Legislature enacts statutes that govern the procedures and evidentiary rules applicable in judicial and executive proceedings, and the Governor appoints judges and participates in the legislative process through the veto power. Such interrelationship, of course, lies at the heart of the constitutional theory of 'checks and balances' that the separation of powers doctrine is intended to serve." (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52-53.)

As discussed above, plaintiff contends PAGA violates the separation of powers doctrine—i.e., defeats or materially impairs the executive branch's exercise of its constitutional functions—by depriving the executive branch of (1) prosecutorial discretion in PAGA cases, and (2) control over PAGA prosecutions or settlements. Plaintiff argues PAGA thus prevents the executive branch from performing its core function of enforcing the law by replacing the Attorney General and other prosecutors with private parties and attorneys.[4]

Plaintiff's chief obstacles in making this argument are the various provisions of PAGA itself which give the executive branch notice of, and discretion to

---

[4] We cannot help but note the irony inherent in the procedural posture of this lawsuit. Plaintiff, a private actor, insists that the Legislature has deprived the executive branch, including specifically the Attorney General, of the ability to exercise one of its core constitutional functions, by devolving those functions to private actors. To effectuate its argument, plaintiff sued the Attorney General, who, for his part, has argued vigorously that his powers are not being usurped. While we do not see the Attorney General's present position as dispositive of the issue, we note at least one court has relied, at least in part, on the Attorney General taking a similar position to resolve a similar separation of powers issue. (*National Paint & Coatings Assn. v. State of California* (1997) 58 Cal.App.4th 753, 764.)

12

exercise control over, PAGA claims. PAGA requires notice to be given to the executive branch before commencement of a PAGA claim (Lab. Code, § 2699.3, subd. (a)), immediately after the commencement of any such claim (Lab. Code, § 2699, subd. (*l*)(1)), upon submission of any proposed settlement of a PAGA claim for court approval (Lab. Code, § 2699, subd. (*l*)(2)), and upon issuance of judgment or other dispositive order in any PAGA civil action (Lab. Code, § 2699, subd. (*l*)(3)). PAGA also allows the executive to investigate and cite employers for Labor Code violations asserted in a PAGA notice. (Lab. Code, § 2699.3, subd. (a)(2)(B).) PAGA also prohibits the filing of any PAGA action "on the same facts and theories" as a citation issued by the executive or an action brought by the executive under Labor Code section 98.3. (Lab. Code, § 2699, subd. (h).)

In analogous past cases, California and federal courts have held that provisions of this type (giving the executive notice of or permitting it to exercise control over qui tam actions) cured any separation of powers issues arising from qui tam statutes.[5] (See, e.g., *National Paint & Coatings Assn. v. State of California*, *supra*, 58 Cal.App.4th at pp. 762-764 [holding Proposition 65 does not violate separation of powers doctrine in part due to notice provisions]; *U.S. ex rel. Kelly v. Boeing Co.* (9th Cir. 1993) 9 F.3d 743, 745-746, 752-755 [holding federal False Claims Act does not violate separation of powers doctrine in part due to provisions granting executive ability to obtain notice of and exercise control over qui tam actions in certain situations]; *Riley v.*

___

[5] California's separation of powers doctrine is substantively identical to the federal doctrine on this point. (*National Paint & Coatings Assn. v. State of California*, *supra*, 58 Cal.App.4th at p. 762; compare *Loving v. U.S.* (1996) 517 U.S. 748, 757 ["the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties"] with *Marine Forests Society v. California Coastal Com.*, *supra*, 36 Cal.4th at p. 15 [separation of powers doctrine prohibits statutes that "as a whole, viewed from a realistic and practical perspective, operate to defeat or materially impair the executive branch's exercise of its constitutional functions"].)

13

*St. Luke's Episcopal Hosp.* (5th Cir. 2001) 252 F.3d 749, 753-757 [same]; *U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec.* (6th Cir. 1994) 41 F.3d 1032, 1040-1041 [same].)

To deal with these provisions and distinguish this case from these past cases, plaintiff cites differences between PAGA's notice provisions and comparable provisions in other qui tam statutes, including Proposition 65 and the California False Claims Act.  Plaintiff highlights three such differences:  (1) the absence of an "evidentiary threshold" for the filing of a PAGA claim; (2) the absence of specific statutory authorization for imposition of sanctions to penalize the filing of a frivolous PAGA claim; and (3) PAGA's relatively short deadlines for the executive to respond to a PAGA notice and investigate the allegations, which plaintiff claims allows PAGA plaintiffs to then proceed "without any executive oversight."

However, plaintiff fails to cite any authority for the proposition that any of these differences creates a separation of powers problem.  As for the first two items, it is not obvious why either would do so.  The absence of an "evidentiary threshold" (a category plaintiff creates to lump together Proposition 65's certificate of merit procedure with the California False Claims Act's in camera filing procedure) for private plaintiffs to commence PAGA litigation has no connection with executive control over PAGA claims.  Similarly, sanctions for frivolous PAGA claims have nothing to do with the interplay of executive and legislative authority.

Plaintiff's last claim, that the short deadlines allow plaintiffs to proceed without executive oversight, is simply false.[6]  Even after PAGA's deadlines elapse and a PAGA action is initiated by a private plaintiff, the executive's role does not end.  As described above, PAGA plaintiffs must still provide notice of the commencement of a

---

[6] We assume for the sake of argument that PAGA's notice periods are shorter than comparable California qui tam statutes, although plaintiff provides no authority for this proposition, and we note that the California False Claims Act's notice period (the only other one discussed in plaintiff's brief) is an identical 60 days. (Compare Lab. Code, § 2699.3, subd. (a) with Gov. Code, § 12652.)

14

PAGA action, the submission of any proposed settlement to the court for approval, and the issuance of any judgment or other dispositive order. Should the action itself or a proposed settlement violate California's public policy in some manner, the executive will receive notice and can take whatever steps it deems appropriate.

Plaintiff points out that, unlike the federal False Claims Act, PAGA does not contain an express provision authorizing the executive to intervene in the action. But California law independently *requires* courts to permit intervention in an action by any person who "claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties" (Code Civ. Proc., § 387, subd. (d)(1)(B)) and allows intervention at the discretion of the trial court by any person who "has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both." (*Id.*, subd. (d)(2).) In the event of an abusive or improper settlement of a PAGA claim (in which a plaintiff might improperly characterize the bulk of the settlement as damages, payable solely to the plaintiff, while minimizing civil penalties owed in part to the state), California law plainly permits the Attorney General to intervene to protect the state's interest in recovering its share of the civil penalties and oppose judicial approval of the settlement. Indeed, that is the obvious purpose of the provisions of PAGA requiring timely notice to be given to the executive upon submission of a proposed settlement to the court for approval.

Plaintiff also cites *Abbott Laboratories v. Superior Court* (2020) 9 Cal.5th 642, arguing it shows "the requisite degree of control that the Attorney General must retain over actions prosecuted on behalf of the state," namely that the Attorney General must be permitted to intervene. Leaving aside that *Abbott* is not a separation of powers case and does not involve qui tam actions whatsoever, plaintiff's argument for *Abbott*'s relevance here is premised on the mistaken supposition that "[n]either PAGA, the

15

California [C]onstitution, nor any other California statute, authorizes the Attorney General (or any other arm of the executive branch) to intervene in or control the prosecution or settlement of PAGA actions once an aggrieved employee files a civil action." As we explain above, section 387, subdivision (d) of the Code of Civil Procedure does precisely that.

In summary, we conclude, as the trial court did, that we are bound to follow our Supreme Court's conclusion in *Iskanian* that "PAGA does not violate the principle of separation of powers under the California Constitution." (*Iskanian*, *supra*, 59 Cal.4th at p. 360.) And even if *Iskanian* did not bind us, applying California's separation of powers doctrine to PAGA leads us to the same conclusion reached by the trial court: PAGA is constitutional.


DISPOSITION

The judgment is affirmed. Defendant shall recover costs on appeal.



SANCHEZ, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.