Filed 10/25/22

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ERNESTO LIMON,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>CIRCLE K STORES INC.,<br><br>     Defendant and Respondent. | F082289, F082929<br><br>(Super. Ct. No. CV-20-002630)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County. Timothy W. Salter, Judge.

Kingsley & Kingsley, Eric B. Kingsley, Ari J. Stiller, and Jessica L. Adlouni, for Plaintiff and Appellant.

McDermott Will & Emery, Maria C. Rodriguez, Christopher A. Braham, and Amanda D. Murray, for Defendant and Respondent.

-ooOoo-

**INTRODUCTION**

Appellant Ernesto Limon appeals from a judgment of dismissal entered in favor of respondent Circle K Stores Inc. (Circle K) and against Limon after the trial court sustained Circle K's demurrer to Limon's CLASS ACTION COMPLAINT (complaint) without leave to amend. We affirm the judgment.

Briefly summarized, Limon's complaint alleges Circle K violated the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.)[1] by failing to provide him with proper FCRA disclosures when it sought and received his authorization to obtain a consumer report[2] about him in connection with his application for employment, and by actually obtaining the consumer report in reliance on that authorization.

Prior to filing his complaint in state court, Limon brought suit in federal district court on the same substantive claims.[3] The district court dismissed the federal action without prejudice in connection with a motion for summary judgment and related motion for reconsideration brought by Circle K, finding Limon lacked standing under article III, section 2 of the United States Constitution.

When Limon filed his complaint in state court, Circle K demurred to each cause of action on grounds Limon (1) lacked legal capacity to sue; (2) was not a real party in interest; and (3) lacked standing to sue. The basis for each of these contentions was that Limon did not allege or suffer any resulting, cognizable harm or injury. The court sustained the demurrer without leave to amend and entered a judgment of dismissal in favor of Circle K.

---

[1] All statutory references are to Title 15 of the United States Code unless otherwise noted.

[2] Subject to certain exclusions not relevant here, "[t]he term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" certain purposes including "employment purposes." (§ 1681a, subd. (d)(1)(B).)

[3] *Limon v. Circle K Stores Inc.*, U.S. Dist. Ct., Eastern Dist. Cal., case No. 1:18-cv-01689-SKO (the federal action).

On appeal, Limon argues no injury is required to pursue his causes of action under the FCRA. In the alternative, he argues he has been injured as a result of Circle K's alleged FCRA violations.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      Factual Background**

"In reviewing a judgment of dismissal entered after the sustaining of a demurrer, we accept as true the factual allegations of the complaint" (*Whittemore v. Owens Healthcare-Retail Pharmacy, Inc.* (2010) 185 Cal.App.4th 1194, 1197) and " ' "consider matters which may be judicially noticed." ' "[4] (*Evans v. City of Berkeley* (2006)

---

[4] On January 5, 2022, Circle K moved this court to take judicial notice of various documents. The motion was unopposed. We deferred ruling on the motion pending consideration of the appeal on its merits. We now grant the motion in its entirety. However, with the exception of item 3.c. and 3.d. below, none of the matters noticed are considered of substantial consequence to the determination of this appeal. Specifically, we take notice of the following:

1.      This court's August 30, 2021, Order denying Limon's motion to consolidate this appeal (appellate case No. F082929) with Limon's appeal of the order upon which the judgment of dismissal was premised (appellate case No. F082289). (Evid. Code, §§ 459, subd. (a), 452, subds. (a), (c), (d).)

2.      Circle K's reply brief filed in appellate case No. F082289. (Evid. Code, §§ 459, subd. (a), 452, subd. (d).)

3.      Circle K's September 16, 2021, unopposed motion for judicial notice filed in appellate case No. F082289 which this court granted. We construe this request as a request to judicially notice the same documents that were the subject of Circle K's September 16, 2021, motion, namely:

        a.      Limon's class action complaint filed in the federal action. (Evid. Code §§ 459, subd. (a), 452, subds. (a), (c), (d).)

        b.      Circle K's reply separate statement of undisputed material facts filed in support of Circle K's motion for summary judgment in the federal action. (Evid. Code §§ 459, subd. (a), 452, subds. (a), (c), (d).)

        c.      Excerpts from the transcript of Limon's deposition in the federal action. (Evid. Code, §§ 452, subd. (h), 459, subd. (a); *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 375 [judicial notice of facts stated in deposition testimony

3.

38 Cal.4th 1, 6.) The facts recited below are alleged in Limon's complaint, or are judicially noticeable. We also set forth some of Limon's related contentions for context. However, we do not assume the truth of those contentions. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300–301.)

Circle K operates gas stations and convenience stores in California. Limon was employed by Circle K from June 29, 2018, through July 31, 2018. To gain employment with Circle K, Limon was required to complete a consent form purporting to authorize Circle K "to obtain a consumer report verifying [Limon's] background and experience." Limon alleges the consent form utilized by Circle K violates the FCRA.

Limon alleges, on information and belief, Circle K required all job applicants to sign the same consent form purportedly allowing Circle K to obtain consumer reports for those applicants. The practice is alleged to have been ongoing for at least five years prior to the filing of the complaint. Limon brought his action "on behalf of himself and all others similarly situated as a class action pursuant to [section] 382 of the Code of Civil Procedure." The complaint contains numerous allegations directed at class certification. Those allegations are not material to Limon's appeal.[5]

---

may be judicially noticed if "they were not or could not be disputed"].) The testimony has not been disputed by either party.

        d.     Limon's response to the federal district court's order granting Circle K's motion for reconsideration of its motion for summary judgment in the federal action. (Evid. Code §§ 459, subd. (a), 452, subds. (a), (c), (d).)

        e.     The federal district court order granting Circle K's motion for summary judgment in the federal action. (Evid. Code §§ 459, subd. (a), 452, subds. (a), (c), (d).)

Notably, the state trial court took judicial notice of these same items (i.e., items 3.a. through 3.e.).

[5] Circle K moved to strike the class certification allegations from the complaint. The trial court deemed the motion moot in light of its decision to grant Circle K's demurrer without leave to amend. The record reveals no other proceedings related to

4.

Limon alleges the consent form used by Circle K contains "extraneous provisions" in violation of the FCRA and related regulatory guidance from the Federal Trade Commission. In particular, Limon alleges Circle K's consent form violates subdivision (b)(2)(A)(i) of section 1681b which provides:

> "**Conditions for furnishing and using consumer reports for employment purposes** [¶] …[¶] (2) **Disclosure to consumer** [¶] (A) **In general** [¶] Except as provided in subparagraph (B),[6] a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—[¶] (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes[.]" (§ 1681b(b)(2)(A)(i).)

Limon further alleges Circle K's use of its consent form to obtain consumer reports for its job applicants violates subdivision (b)(2)(A)(ii) of section 1681b. That provision prohibits an employer from obtaining a consumer report on a job applicant "unless—[¶] … [¶] … the consumer has authorized in writing (which authorization may be made on the [disclosure] document …) the procurement of the report by that person." (§ 1681b(b)(2)(A)(ii).)

---

class certification, and the parties do not raise any issue on appeal with regard to class certification.

**6** Subparagraph (B) of section 1681b, subdivision (b)(2) provides: "**(B) Application by mail, telephone, computer, or other similar means** [¶] If a consumer described in subparagraph (C) applies for employment by mail, telephone, computer, or other similar means, at any time before a consumer report is procured or caused to be procured in connection with that application—[¶] (i) the person who procures the consumer report on the consumer for employment purposes shall provide to the consumer, by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under section 1681m(a)(3) of this title; and [¶] (ii) the consumer shall have consented, orally, in writing, or electronically to the procurement of the report by that person." (§ 1681b(b)(2)(B).)

Provisions in Circle K's consent form include a "liability release" and "state disclosures" which Limon alleges violate the " 'standalone' disclosure and 'clear and conspicuous' requirements" of section 1681b, subdivision (b)(2)(A)(i). Specifically, Circle K's consent form contains the following language (with the provisions Limon contends are violative of the FCRA in bold type):

> " 'I authorize, without reservation, any person or entity contacted by Circle K … or its agent(s) to furnish the above stated information, **and I release any such person or entity from any liability for furnishing such information**;'

> " '**Copy: If you are applying for a job in or live in California, Minnesota, or Oklahoma you may request a copy of the report by checking this box**.' " (Bold type added.)

Limon alleges Circle K's "failure to provide a compliant disclosure, and failure to obtain proper authorization, deprived [Limon] and others similarly situated of the right to information and the right to privacy guaranteed by … [section] 1681b(b)(2)(A)."

In his first cause of action, Limon alleges Circle K's standard consent form is unlawful because it "violates the [FCRA's] 'standalone' disclosure requirement" and "violates the [FCRA's] 'clear and conspicuous disclosure' requirement" contained in subdivision (b)(2)(A)(i) of section 1681(b); Circle K knew the consent forms violated the FCRA; and Circle K's violations of the FCRA were willful and in "deliberate disregard of its obligations and the rights" of Limon and the proposed class members.

In his second cause of action, Limon alleges he "was confused regarding the nature of his rights under the FCRA and did not give valid authorization for [Circle K] to procure a consumer report in violation" of section 1681b, subdivision (b)(2)(A)(ii); his purported authorization for Circle K to obtain his consumer report, and those executed by proposed class members, were invalid; and Circle K obtained his and proposed class members' consumer reports notwithstanding this alleged invalidity. Limon reiterates that

Circle K's violations of the FCRA were willful and that it acted in "deliberate disregard of its obligations and the rights" of Limon and proposed class members.

Limon contends he and all proposed class members are entitled to "statutory damages of not less than $100 and not more than $1,000 for every willful violation of the FCRA," as well as punitive damages, and an award of costs and attorney fees, pursuant to subdivisions (a)(1)(A), (2), and (3) of section 1681n. Subdivision (a) of section 1681n provides, in relevant part:

> "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—[¶] (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; … [¶] … [¶] (2) such amount of punitive damages as the court may allow; and [¶] (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." (§ 1681n(a)(1)(A), (2), (3).)

## II. Procedural Background

### A. Federal Court Proceedings

Limon "initially filed an action alleging the violations [contained in his complaint] in the United States District Court for the Eastern District of California" (i.e., the federal action) on December 11, 2018.

Circle K moved for summary judgment in the federal action. When the federal district court denied the motion, Circle K moved for reconsideration. The court granted the motion for reconsideration.

On reconsideration, the federal district court, relying on *Ruiz v. Shamrock Foods Co.* (9th Cir. 2020) 804 Fed.Appx. 657, noted "demonstrating a concrete injury for Article III standing purposes as defined in … *Syed* [*v. M-I, LLC* (9th Cir. 2017) 853 F.3d 492 (*Syed*)] … requires not just evidence of confusion about an FCRA authorization form, but also evidence that a plaintiff 'would not have signed [the form] had it contained

7.

a sufficiently clear disclosure.' " Because the court found "there was no evidence in the record demonstrating that [Limon] would not have signed Circle K's FCRA Consent form had it been 'sufficiently clear,' i.e., had it not contained the liability waiver," it gave Limon an opportunity to "supplement the record with evidence sufficient to establish Article III standing[.]"

In a written response to the federal district court's invitation to provide supplemental evidence, Limon stated he " 'does not believe that it will be possible to supplement the record with evidence sufficient to establish Article III standing under the standard that the [c]ourt has adopted[.]" Based on this concession, on June 9, 2020, the court granted summary judgment in favor of Circle K and dismissed the federal action without prejudice for lack of jurisdiction.

### B. State Court Proceedings

On June 11, 2020, Limon filed his complaint in state court.

On August 5, 2020, Circle K filed a demurrer to the complaint, and each cause of action contained therein, "pursuant to California Code of Civil Procedure [section] 430.10[, subdivision ](b) on the grounds that [Limon] lacks capacity to sue on behalf of himself and purported class members; California Code of Civil Procedure [section] 430.10[, subdivision ](d) on the grounds that [Limon] is not a real party in interest; [and] California Code of Civil Procedure [section] 430.10[, subdivision ](e) on the grounds that the [c]omplaint fails to state a claim sufficient to constitute a cause of action." Circle K's demurrer was premised on the contention Limon suffered no injury and "suffered no harm asserted" in the complaint. Circle K also moved to strike the allegations in the complaint related to class certification.

On December 3, 2020, the trial court ruled on Circle K's demurrer and motion to strike. The court sustained the demurrer without leave to amend, and ruled the motion to

8.

strike was rendered moot.  On January 20, 2021, Limon appealed from the trial court's December 3, 2020, ruling (appellate case No. F082289).[7]

On June 15, 2021, the trial court entered a judgment of dismissal in favor of Circle K and against Limon based on the court's December 3, 2020, order granting Circle K's demurrer.  On June 17, 2021, Limon timely appealed from the judgment (appellate case No. F082929).

On August 10, 2021, Limon moved to consolidate appellate case No. F082289 with appellate case No. F082929 for all purposes.  Although we denied the motion, on August 26, 2022, we subsequently ordered the two appeals consolidated for purposes of opinion only.

## DISCUSSION

### I.      Pending Motions On Appeal

#### A.      *Circle K's Motion To Dismiss Appellate Case No. F082289*

On January 5, 2022, Circle K moved to dismiss appellate case No. F082289—i.e., Limon's appeal from the trial court's order sustaining Circle K's demurrer without leave to amend—on the ground the appeal is substantively duplicative of Limon's appeal from the judgment of dismissal (i.e., appellate case No. F082929).

On January 19, 2022, Limon opposed the motion, arguing the appeal from the trial court's order sustaining the demurrer should be liberally construed as an appeal from the judgment of dismissal, and he will be prejudiced if appellate case No. F082289 is dismissed because (1) Circle K did not move to dismiss the appeal until after Limon filed his reply brief in the case; (2) "Circle K received the unfair benefit of taking a 'sneak peek' at Limon's reply arguments in the first appeal so it could adjust its respondent's brief in the second appeal"; and (3) "Circle K now wants to dismiss this first appeal so

---

[7] Limon has incorporated, by reference, the entire Appellant's Appendix filed in appellate case No. F082289 into appellate case No. F082929.  (See Cal. Rules of Court, rule 8.124(b)(2).)

9.

the Court only considers its modified arguments." Circle K filed a reply brief in support of the motion on January 25, 2022.

On January 26, 2022, this court issued its order deferring the motion to dismiss "pending consideration of the appeal on its merits." We now rule on the motion.

"Where the judgment is appealable and is in fact appealed from, to permit appeal from [the order that led to the judgment] would permit two appeals from the same decision [citation]. [U]pon determination of the appeal from the judgment, the appeal[] from such [an] order[] become[s] moot and should be dismissed." (*Taliaferro v. Taliaferro* (1962) 203 Cal.App.2d 652, 652–653 (*Taliaferro*); see also, *Fuller v. San Bernardino Valley Municipal Water Dist.* (1966) 242 Cal.App.2d 66, 68 ["An appeal may be dismissed … where the issue has become moot by reason of a decision in another pending action or in the same action."].)

We fail to appreciate any basis for concluding Limon would be prejudiced by dismissal of appellate case No. F082289. Circle K was entitled to review Limon's reply brief upon its filing, and Limon has not cited to any case law or statutory authority indicating any impropriety in Circle K having waited until after Limon filed his reply brief to file its motion to dismiss. In addition, Limon had the opportunity to address any "adjust[ed]" arguments presented by Circle K in his reply brief in appellate case No. F082929.

We would be more receptive to Limon's argument that this court should liberally construe Limon's appeal from the trial court's order sustaining the demurrer as an appeal from the judgment of dismissal were it not for the fact that Limon also timely appealed the judgment. Limon is not entitled to two appeals of the same substantive matter. (*Taliaferro*, *supra*, 203 Cal.App.2d at pp. 652–653.)

The motion to dismiss appellate case No. F082289 is granted.

10.

### B. Motion To Strike Limon's Notice Of New Authority

On May 16, 2022, Limon filed a "Notice of New Authority (Cal. Rules of Court, rule 8.254)" in which he advised this court of a recent decision of Division 1 of the Fourth District Court of Appeal. On May 18, 2022, Circle K filed an objection to, and motion to strike, Limon's Notice of New Authority. On May 23, 2022, this court deferred ruling on the motion pending consideration of the appeal on its merits.

On August 10, 2022, the Supreme Court of California ordered depublication of the decision Limon cited in his notice. (*Hebert v. Barnes & Noble* (2022) 2022 Cal.LEXIS 4633 (*Hebert*).) Consequently, we are unable to rely upon the new authority cited by Limon. (Cal. Rules of Court, rule 8.1115(a).)

Based on the Supreme Court's order in *Hebert*, Circle K's motion to strike is granted.

## II. Arguments Abandoned Or Forfeited On Appeal

### A. Propriety Of Court's Order Denying Limon Leave To Amend

Circle K notes the trial court's decision to deny Limon leave to amend is reviewable under an abuse of discretion standard. However, Limon does not challenge that aspect of the court's decision and did not brief the issue. "Issues not raised in an appellant's brief are deemed waived or abandoned." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) Because it was not briefed, any issue related to whether the trial court properly denied Limon leave to amend has been abandoned. As a result, we do not address the issue.

### B. Adequacy of Notice of Demurrer

In his opening brief, Limon states "Circle K admittedly served its demurrer without sufficient statutory notice, depriving Limon of at least four days to prepare his opposition, but it refused Limon's proposal to withdraw the motion and refile." Limon does not expound on the statement in his brief. No supporting facts, argument, or related

11.

law are discussed. Limon merely cites to the record wherein he made such an argument to the trial court.

" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) "An appellant cannot rely on incorporation of trial court papers, but must tender arguments *in the appellate briefs*." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 109; *Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334 ["Rather than brief those arguments, [appellants] purport to 'incorporate' them from papers filed below. We do not consider such arguments on appeal."].)

Because Limon has failed to provide this court with supporting facts, argument, or related law relevant to the issue of whether adequate notice of the demurrer was given by Circle K, we deem the issue forfeited. (*Central Valley Gas Storage, LLC v. Southam* (2017) 11 Cal.App.5th 686, 696 [failure to provide supporting legal analysis or legal authority forfeits issue on appeal].)

### III.    Standard Of Review

The parties agree the standard of review on appeal is de novo. We concur. "In reviewing a judgment following the sustaining of a demurrer without leave to amend, we decide de novo whether the complaint states facts sufficient to state a cause of action." (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1552.) " 'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396 (*Sisemore*).)

12.

"On appeal, we will affirm a 'trial court's decision to sustain the demurrer [if it] was correct on any theory. [Citation.]' [Citation.] Thus, 'we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself.' " (*Sisemore*, *supra*, 151 Cal.App.4th at p. 1397.)

## IV. Congress's Purpose In Enacting The FCRA

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." (*Safeco Ins. Co. of America v. Burr* (2007) 551 U.S. 47, 52 (*Safeco*).) In enacting the FCRA, Congress found the "banking system is dependent upon fair and accurate credit reporting" and that "[i]naccurate credit reports … impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence …." (§ 1681, subd. (a)(1).) Congress further found "[t]here is a need to [e]nsure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." (*Id.*, at subd. (a)(4).) The purpose of the FCRA was "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce … in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of [the FCRA]." (*Id.*, at subd. (b).)

In amending the FCRA in 1996, "Congress was specifically concerned that prospective employers were obtaining and using consumer reports in a manner that violated job applicants' privacy rights. S. Rep. No. 104-185 at 35 (1995). The disclosure and authorization provision codified at … [section] 1681b(b)(2)(A) was intended to address this concern by requiring the prospective employer to disclose that it may obtain the applicant's consumer report for employment purposes and providing the means by which the prospective employee might prevent the prospective employer from doing so— withholding of authorization. S. Rep. No. 104-185 at 35. This provision furthers

Congress's overarching purposes of ensuring accurate credit reporting, promoting efficient error correction, and protecting privacy.  [Citation.]  [T]he provision promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors" before an adverse hiring decision is made based on incorrect information.  (*Syed*, *supra*, 853 F.3d at pp. 496–497.)

## V.  General Differences Between Requirements For Standing In Federal And California Courts

"The [U.S.] Constitution confers limited authority on each branch of the Federal government."  (*Spokeo, Inc. v. Robins* (2016) 578 U.S. 330, 337 (*Spokeo II*).)  The judicial powers of federal courts are circumscribed by section 2 of article III of the United States Constitution which limits its powers to identified "Cases" and "Controversies."[8]  (U.S. Const., art. III, § 2; *Spokeo, II*, *supra*, 578 U.S. at p. 337.)

For purposes of federal court jurisdiction, case law has "established that the 'irreducible constitutional minimum' of standing consists of three elements.  [Citation.]  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  (*Spokeo II*, *supra*, 578 U.S at p. 338.)

"In assessing standing, [however, ]California courts are not bound by the 'case or controversy' requirement of article III of the United States Constitution, but instead are

---

[8] Article III, section 2 of the U.S. Constitution provides, in relevant part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;--between Citizens of different States,--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

guided by 'prudential' considerations. [Citation.] 'One who invokes the judicial process does not have "standing" if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.' [Citations.] 'The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.]' [Citation.] 'California decisions ... generally require a plaintiff to have a personal interest in the litigation's outcome.' " (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 370.)

The questions presented on appeal are whether a plaintiff must suffer an injury in order to have standing to sue under the FCRA in California courts, and, if so, whether Limon has adequately alleged a sufficient injury to confer standing upon him. (Cal. Judges Benchbook: Civil Proceedings Before Trial (CJER 2022) Parties, § 10.26 ["The plaintiff must allege sufficient facts in the complaint to establish standing to sue."]; *Codoni* v. *Codoni* (2002) 103 Cal.App.4th 18, 21.)

## VI.     Standing In California

### A.     *Code of Civil Procedure Section 367*

Limon contends "California standing doctrine 'simply requires that the action be maintained in the name of "[t]he person who has the right to sue under [the] substantive law," ' " quoting *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 991, italics omitted (*Jasmine Networks*).) This is at best an incomplete interpretation of the statement made by the court in *Jasmine Networks* and an oversimplification of the standing doctrine in California.

The referenced statement in *Jasmine Networks* was made in response to the defendants' "suggest[ion] that a 'standing' requirement arises in California courts by virtue of Code of Civil Procedure section 367[.]" (*Jasmine Networks*, *supra*,

15.

180 Cal.App.4th at p. 991.)  Code of Civil Procedure, section 367 provides, "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."  The actual statement in *Jasmine Networks* court reads "<u>section 367</u> simply requires that the action be maintained *in the name of* '[t]he person who has the right to sue *under the substantive law*.'  [Citation.]  [I]f the plaintiff has a cause of action in his own right, and he pursues it in his own name, section 367 poses no obstacle to maintenance of the action."  (*Jasmine Networks*, *supra*, at p. 991, underlining added.)  Thus, in making the referenced statement, the *Jasmine Networks* court was interpreting Code of Civil Procedure, section 367.  It was not attempting to delineate the entire scope of California's standing doctrine.

Generally speaking, a party lacks standing to assert a claim that belongs to another person.  (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004.)  Thus, it has been said on many occasions "[a] real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law."  (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605; *City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 504; *Doe v. Lincoln Unified School Dist.* (2010) 188 Cal.App.4th 758, 765; *Ventura County Ry. Co. v. Hadley Auto Transport* (1995) 38 Cal.App.4th 878, 880; *Gantman v. United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560, 1566; *Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.* (1981) 123 Cal.App.3d 898, 906; *Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787.)

Code of Civil Procedure, section 367 undoubtedly relates to standing in that it largely prohibits persons from pursuing claims they themselves do not own.  (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 936 (*Yvanova*) ["In general, California law does not give a party personal standing to assert rights or interests belonging solely to others," citing Code of Civil Procedure, section 367]; *Jasmine Networks*, *supra*, 180 Cal.App.4th at p. 992 [same].)  However, the Legislature has the power "to grant [such persons] a right to sue for the benefit of others, i.e., to make him a

16.

real party in interest. In such a case it might justly be said that it has granted him 'standing.' " (*Jasmine Networks*, *supra*, at p. 992.) The Law Revision Commission Comments to Code of Civil Procedure, section 367 provide examples of "statutes that permit prosecution of an action in the name of a person other than the real party in interest" including "Civil Code Section 1363 (association to manage common interest development), Code of Civil Procedure Section 369 (fiduciaries), and Probate Code Sections 550-550 (insured claims)." (Cal. Law Revision Com. com., 13D pt. 2 West's Ann. Code of Civ. Proc. (2022 ed.) foll. § 367, p. 98.)

Code of Civil Procedure, section 367 merely requires, in most instances, that the person who brings the claim in a California court must be the person who actually owns the claim. Notably, federal courts have the same requirement. Federal Rule of Civil Procedure, rule 17 provides: "An action must be prosecuted in the name of the real party in interest." However, just as this requirement is not the only requirement for standing under Article III of the federal constitution, this requirement is not the only requirement for standing in California.

## B. *Additional Standing Considerations*

### 1. **Cases Relied Upon By Limon**

Noting the lack of article III-type restrictions on a California court's exercise of jurisdiction, Limon contends California does not require a "concrete injury" to exercise jurisdiction over his claims. Limon cites to *National Paint & Coatings Assn. v. State of California* (1997) 58 Cal.App.4th 753, 761 (*National Paint*) for the proposition that "concrete injury and redressability are [not] essential prerequisites to justiciability in California."

In *National Paint*, the court considered the plaintiff paint manufacturers' challenge to "private citizen enforcement provisions" of the Safe Drinking Water and Toxic

Enforcement Act of 1986.[9]  (*National Paint*, *supra*, 58 Cal.App.4th at p. 756.)  The plaintiffs argued "the Act's grant of authority to 'any person' to sue in the public interest violates a constitutional requirement that only persons with 'standing to sue' may initiate an action."  (*Id*. at 761.)  The plaintiffs argued California is bound by the same three elements necessary for standing in federal court, i.e., "a concrete and particularized injury-in-fact, traceable to the action of the defendant, and likely to be redressed by a favorable court decision."  (*National Paint*, *supra*, 58 Cal.App.4th at p. 761.)

The *National Paint* court wrote "[t]he California Constitution specifically provides (art. I, § 24), that California constitutional rights do not depend on the United States Constitution."  (*National Paint*, *supra*, 58 Cal.App.4th at p. 761.)  It noted that the plaintiff paint manufacturers "cite[d] no California cases holding that concrete injury and redressability are essential prerequisites to justiciability in California, or that a 'citizen suit right' such as conferred by the Act is unconstitutional.  [¶]  On the contrary, California authority *supports* the conclusion that a suit by a citizen in the undifferentiated public interest is 'justiciable,' or appropriate for decision in a California court."  (*Ibid.*, citing *White v. Davis* (1975) 13 Cal.3d 757, 762 (*White*) [rejecting a challenge to taxpayer standing as provided in Code of Civil Procedure section 526a].)

As is relevant here, *National Paint* merely stands for the proposition that the Legislature may grant standing to sue in the public's interest (public interest standing) even in the absence of a concrete injury.  (*National Paint*, *supra*, 58 Cal.App.4th at pp. 761–762 [noting Code of Civil Procedure section 526a expressly authorizes citizen suits in the public interest].)

Limon further relies on *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241 (*Weatherford*) and *White*, *supra*, 13 Cal.3d at page 762, for the proposition that concrete injury is not a requirement for standing in California.  Like *National Paint*, *Weatherford*

---

[9] Health & Safety Code, sections 25249.5–25249.13.

and *White* also involved public interest standing—i.e., the Legislature's specific grant of standing to pursue claims in the public interest.

In *Weatherford*, our high court considered whether a taxpayer's "standing to sue under [Code of Civil Procedure] section 526a[10] requires the payment of a property tax" or other specific type of tax payment. (*Weatherford*, *supra*, 2 Cal.5th at p. 1245 [holding the statute does not require the payment of property tax].) In discussing the Legislature's grant of standing to taxpayers under the statute, the court wrote: "[Code of Civil Procedure] [s]ection 526a provides a mechanism for controlling illegal, injurious, or wasteful actions by [government] officials. That mechanism, moreover, remains available *even where the injury is insufficient to satisfy general standing requirements under [Code of Civil Procedure] section 367*. [Citations.] Unlike public interest standing under [Code of Civil Procedure] section 1086, which we have described as a judicially recognized 'exception to, rather than repudiation of, the usual requirement of a beneficial interest [under section 1086],' [citation], section 526a represents a legislative decision to create judicial access for parties that would not otherwise be eligible to seek relief under [Code of Civil Procedure] sections 367 or 1086." (*Weatherford*, *supra*, 2 Cal.5th at p. 1249, italics added.)

In *White*, an earlier case, our high court had considered standing under Code of Civil Procedure section 526a. (*White*, *supra*, 13 Cal.3d at pp. 762–765.) It affirmed the Legislature's power to grant standing upon an individual to sue in the public interest. (*Id.*, at p. 764 ["Past cases make clear that under [Code of Civil Procedure] section 526a 'no showing of special damage to the taxpayer [is] necessary[.]' "].)

---

**10** Code of Civil Procedure section 526a, provides in part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, wasted of, or injury to, the estate, funds or other property of a local agency, may be maintained … either by a resident therein, or by a corporation, who is assessed for and is liable to pay … a tax that funds the defendant local agency …."

*National Paint*, *Weatherford*, and *White* stand for the proposition that the Legislature may authorize public interest lawsuits by a plaintiff even if that plaintiff has not been injured by the claimed violation. (*White*, *supra*, 13 Cal.3d at p. 764; *National Paint*, *supra*, 58 Cal.App.4th at p. 762.) These cases do not, however, stand for the proposition that a concrete or particularized injury is never required in order for a plaintiff to have standing to sue in California.

Limon cites several additional cases in support of his claim that concrete injury is not required for standing in California—*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160 (*Angelucci*), *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353 (*Goehring*), and *McConnell v. Cowan* (1955) 44 Cal.2d 805 (*McConnell*).

In *Angelucci*, the all-male plaintiffs sued defendant supper club under the Unruh Civil Rights Act contending they were discriminated on the basis of sex due to the defendant charging them higher admission prices than its female patrons. (*Angelucci*, *supra*, 41 Cal.4th at pp. 164–165.) The high court in *Angelucci* wrote, "In general terms, in order to have standing, *the plaintiff must be able to allege injury*—that is, some 'invasion of the plaintiff's legally protected interests.' " (*Id.*, at p. 175, italics added.) In considering whether the plaintiffs had standing to sue for discrimination under the Unruh Civil Rights Act, the high court wrote, " 'a plaintiff cannot sue for discrimination in the abstract, but *must actually suffer the discriminatory conduct*.' " (*Ibid.*, italics added.) The court further noted that "the [Unruh Civil Rights] Act renders 'arbitrary sex discrimination by businesses … *per se* injurious.' " (*Id.*, at p. 174.) The court held the plaintiffs had "adequately alleged they had suffered an 'invasion of legally protected interests' [citation] sufficient to afford them an interest in pursuing their action vigorously." (*Id.*, at p. 175.) The court stated, " 'Section 51 [of the Unruh Civil Rights Act] provides that all patrons are entitled to *equal* treatment. Section 52 [of the Act] provides for minimum statutory damages … for *every* violation of section 51, *regardless* of the plaintiff's actual damages.' " (*Id.*, at p. 174.)

20.

*Angelucci* does not stand for the proposition that a civil rights plaintiff need not suffer concrete injury in order to sue. In fact, the language employed in *Angelucci* makes clear the high court's view that, under the Unruh Civil Rights Act, an injury is required for standing. (*Angelucci*, *supra*, 41 Cal.4th at p. 175 ["the plaintiff must be able to allege injury" and "must actually suffer the discriminatory conduct"].) The court determined the plaintiffs suffered injury because the plaintiffs' claims were *per se injurious*. (*Id.*, at p. 174.)

Limon's citation to *Goehring* is also unavailing. The plaintiffs' standing was not at issue in the case. Rather, the arguably related question was whether a claim under Business and Professions Code section 6061 required the plaintiffs prove an injury to obtain the relief specified in the statute. Business and Professions Code section 6061 "requires any unaccredited law school to 'provide every student with a disclosure statement, subsequent to the payment of any application fee but prior to the payment of any registration fee,' containing certain information, such as its unaccredited status …." (*Goehring*, *supra*, 121 Cal.App.4th at p. 377.) The statute provides, in part: "If any school does not comply with these requirements, it *shall make a full refund of all fees paid by students*." (*Ibid.*, italics added.)

Unlike the FCRA's statutory damages provision, the relief specified in Business and Professions Code section 6061 is not characterized as "damages." Nor does the latter statute speak in terms of compensation for injury. In holding that "actual damage[s are] not an element of the claim," the *Goehring* court noted, " ' " '[T]he California Supreme Court has characterized as a penalty "any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him [or her] for a legal damage done him [or her] by the former." ' " ' " (*Goehring*, *supra*, 121 Cal.App.4th at p. 386.) The court concluded Business and Professions Code section 6061 was "penal in nature" and that the "payment of tuition, standing alone, does not constitute actual damage." (*Id.*, at p. 387.) The court noted that "without [Business and Profession Code] section 6061 [the

plaintiffs] would have no ground for the recovery of tuition. (*Ibid.*) Thus, the Legislature designed the statute's refund provisions to operate as a penalty.[11]

Similarly, standing was not the issue in *McConnell*. Rather, the *McConnell* court considered whether a plaintiff lessor of real property could avoid paying a commission to the defendant, a real estate broker who acted as a dual agent for the plaintiff and his lessee in negotiating a lease. (*McConnell*, *supra*, 44 Cal.2d at pp. 806–809.) In answering in the affirmative, our high court stated " '[Where] an agent has assumed to act in a double capacity, a principal who has no knowledge of such dual representation … may void the transaction. *Actual injury is not the principle upon which the law holds such transaction voidable*; rather, the law holds it voidable in order to prevent the agent from putting himself in a position where he will be tempted to betray his principal.' " (*Id.*, at p. 809, italics added.)

In sum, the cases cited by Limon acknowledge the Legislature's power to confer standing on a class of persons irrespective of whether they suffered injury. However, none of the cases relied upon by Limon stand for the proposition that concrete injury is never required for standing to sue.

### 2. Beneficial Interest Requirement

Limon contends that, in light of the above cases, we "should not be diverted by passing statements in *Associated Builders and Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362 [(*Associated Builders*)] or *People ex rel. Dept. of Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 987 [(*People ex rel. Dept. of Conservation*)], which Circle K may use to try to equate the federal and state standing rules."

---

[11] In a later section of this opinion, we address Limon's characterization of the statutory damages provision in the FCRA as "statutory penalties."

22.

Both *Associated Builders* and *People ex rel. Dept. of Conservation* involved writ petitions brought under Code of Civil Procedure section 1086, which provides the writ "must be issued upon the verified petition of the party *beneficially interested*." (Italics added.) The passing statements in *Associated Builders* referenced by Limon read:

> "To have standing to seek a writ of mandate, a party must be 'beneficially interested' (Code Civ. Proc., § 1086), i.e., have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] This standard, as the Commission points out, is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." ' " (*Associated Builders*, *supra*, 21 Cal.4th at pp. 361–362.)

(See also, *People ex rel. Dept. of Conservation*, *supra*, 36 Cal.4th at p. 986 [quoting *Associated Builders* for same proposition].)

Limon contends the beneficial interest requirement is limited to mandamus actions under Code of Civil Procedure section 1086. In response, Circle K contends the beneficial interest test is the "traditional standing test for individuals to initiate a lawsuit for damages … [and] requires the named plaintiff to 'demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical,' " citing, among other cases, *Schoshinski v. City of Los Angeles* (2017) 9 Cal.App.5th 780, 791 (*Schoshinski*). Circle K contends "[t]here is no meaningful distinction between the beneficial-interest requirement applicable to petitions for writs of mandate and the beneficial-interest requirements for an ordinary cause of action."

In *Schoshinski*, the plaintiffs brought a class action lawsuit against the City of Los Angeles (City) for unlawfully charging them (and other multiunit residents) trash disposal fees for services they did not receive. (*Schoshinski*, *supra*, 9 Cal.App.5th at p. 784.) An earlier class action suit of the same nature had been settled and an injunction issued by which the City was required to reimburse all putative class members for the

23.

fees they had been unlawfully charged. (*Id.*, at pp. 784–786.) The plaintiffs did not receive reimbursement of the unlawful charges until after the date they were due under the prior settlement agreement, and after they had filed suit. (*Id.*, at pp. 786–787.) The trial court granted summary judgment in favor of the City on the plaintiffs' claims concluding the "plaintiffs' claims were subsumed by that settlement and it provided all of the relief plaintiffs sought, thus plaintiffs had no valid claims." (*Id.*, at pp. 789–790.)

The *Schoshinski* plaintiffs appealed contending, among other things, that they still had standing to prosecute claims on behalf of the class. (*Schoshinski*, *supra*, 9 Cal.App.5th at p. 790.) In discussing the issue of standing, the *Schoshinski* court confirmed the beneficial interest test applied to the case before it. It wrote:

> " 'In general, a named plaintiff must have standing to prosecute an action [Citation.] ... "As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator. [Citations.] To have standing, a party must be beneficially interested in the controversy; that is, he or she must have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical.' " (*Schoshinski*, *supra*, 9 Cal. App. 5th at p. 791.)

However, Limon argues the "California Supreme Court has rejected adopting Article III standards for purposes of California standing doctrine in cases decided after *Associated Builders* and *People ex rel. Dept. of Conservation*," citing *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166 (*Save the Plastic Bag*).

In our view, Limon inaccurately characterizes *Save the Plastic Bag*. Moreover, he conflates "rejecting adopt[ion] of Article III standing" with rejecting *any* commonality

among standing requirements in the federal and California judicial systems. Although courts have routinely noted that California is not constrained by the case or controversy provisions of Article III of the U.S. Constitution (e.g., *Weatherford*, *supra*, 2 Cal.5th at pp. 1247–1248; *Jasmine Networks*, *supra*, 180 Cal.App.4th at p. 990; *People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 497), they have also equated the "beneficially interested" test for standing in California to the injury-in-fact prong of the Article III test for standing in the federal courts (e.g., *People for Ethical Operation of Prosecutors and Law Enforcement v. Spitzer* (2020) 53 Cal.App.5th 391, 407–408; *Synergy Project Management, Inc. v. City and County of San Francisco* (2019) 33 Cal.App.5th 21, 30–31; *SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1053; *California Assn. for Health Services at Home v. State Dept. of Health Services* (2007) 148 Cal.App.4th 696, 706–707). Thus, while it is true that standing in California is not explicitly governed by Article III of the U.S. Constitution, it is also true that there are, in many instances, commonalities between California's standing doctrine and federal standing doctrine.

The issue in *Save the Plastic Bag* was whether a coalition of plastic bag manufacturers and distributors had standing to "challenge a determination on the preparation of an environmental impact report." (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 160.) The Court of Appeal concluded the plaintiff had *both* public interest standing and "standing in its own right" to bring the challenge. (*Ibid.*) In discussing standing in the plaintiffs' own right, the court wrote:

> "As a general rule, a party must be 'beneficially interested' to seek a writ of mandate. (Code Civ. Proc., § 1086.) 'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. [Citations.] … "One who is in fact adversely affected by governmental action should have standing to challenge that action if it is judicially reviewable." [Citation.]'

[Citation.] The beneficial interest must be direct and substantial." (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 165.)

The *Save the Plastic Bag* court then recognized the public interest exception to the rule, writing:

> "Nevertheless, ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' [Citation.] This ' "public right/public duty" exception to the requirement of beneficial interest for a writ of mandate' 'promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' " (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 166.)

Thus, *Save the Plastic Bag* continued to recognize the "beneficial interest" requirement necessary for a party to seek writ relief under Code of Civil Procedure section 1086, and also noted an exception to that rule. The court did not suggest there is no commonality between the federal injury-in-fact test and the test for beneficial interest standing.

### 3. The Beneficial Interest Requirement For Standing Is Not Limited To Mandamus Actions

There are a number of California cases that indicate the "beneficial interest" requirement applies *generally* to questions of standing—except, of course, in cases involving public standing or where the statute at issue otherwise confers standing on a plaintiff.

In *Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the Assemblies of God* (2009) 173 Cal.App.4th 420 (*Iglesia*), a case which did not involve writ proceedings under Code of Civil Procedure section 1086, the court held, "To have standing, a party must be beneficially interested in the controversy, and have 'some special interest to be served or some particular right to be preserved or protected.' [Citation.] This interest must be concrete and actual, and must not be conjectural or hypothetical." (*Iglesia*, *supra*, 173 Cal.App.4th at p. 445.)

26.

In *Coral Construction, Inc. v. City and County of San Francisco* (2004) 116 Cal.App.4th 6 (*Coral Construction*), the plaintiff was a construction company that frequently bid on projects within the state and within the City and County of San Francisco (City) as a contractor or subcontractor. (*Id.*, at pp. 10–12) After one of its bids for a City project was rejected on grounds it did not meet the requirements of a City ordinance mandating use of minority and/or women owned businesses, the plaintiff sued to challenge the constitutionality of the ordinance. (*Id.*, at p. 12.)

The City moved for summary judgment on the ground the plaintiff lacked standing because the plaintiff " 'cannot identify specific facts supporting its claim that [the Ordinance] will cause [the plaintiff] to suffer a future injury that is both (1) concrete and particularized, and (2) imminent.' " (*Coral Construction*, *supra*, 116 Cal.App.4th at p. 14.) The trial court granted the motion, but the appellate court reversed. (*Id.*, at pp. 14, 28) In doing so, the appellate court noted that, in order to challenge a legislative act, "a plaintiff 'must be beneficially interested in the controversy; that is, he or she must have "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." ' " (*Id.*, at p. 15.) Like other courts before it, the *Coral Construction* court acknowledged that the beneficial interest standard is "equivalent to the federal injury in fact test …." (*Id.*, at p. 15, internal quotation marks omitted.)

The requirement that a party be "beneficially interested" in an action in order to have standing has been acknowledged in a number of cases not involving Code of Civil Procedure section 1086. (*City of Palm Springs v. Luna Crest, Inc.* (2016) 245 Cal.App.4th 879, 883 (*Luna Crest*) [challenging City's permit requirement]; *Department of Fair Employment & Housing v. M&N Financing Corp.* (2021) 69 Cal.App.5th 434, 443–444 [standing to sue employer for violations of Unruh Civil Rights Act]; *Sipple v. City of Hayward* (2014) 225 Cal.App.4th 349, 358–359 [company's standing to seek refunds on behalf of customers for taxes collected and

27.

remitted by company]; *TracFone Wireless, Inc. v. County of Los Angele*s (2008) 163 Cal.App.4th 1359, 1364 [same]; *MTC Financial Inc. v. California Dept. of Tax & Fee Administration* (2019) 41 Cal.App.5th 742, 747; *Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 810 [standing to challenge wrongful foreclosure]; *Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 465–466 (*Boorstein*) [standing for purposes of Civil Code, § 1789.83 et seq. and Business and Professions Code, § 17200 et seq.].)

Although there are exceptions as illustrated in the discussion above, we conclude, as a general matter, to have standing to pursue a claim for damages in the courts of California, a plaintiff must be beneficially interested in the claims he is pursuing.

## VII.   The FCRA Does Not Eliminate The Requirement Limon Be Beneficially Interested (Suffer An Injury-In-Fact) In Order To Have Standing

### A.   *Statutory Damages Are Designed To Compensate For Injury*

Limon contends the "FCRA establishes statutory penalties for these types of willful violations regardless of whether they result in an injury," citing section 1681n(a)(1)(A) and *Ramirez v. Midwest Airlines, Inc.* (D. Kan. 2008) 537 F.Supp.2d 1161, 1168 (*Midwest Airlines*).  Circle K argues Limon "conflates damages with penalties," and the terms are not synonymous.  Circle K notes the FCRA uses both terms, citing sections 1681n and 1681s, and argues the terms should be interpreted to have separate meanings.  In furtherance of that argument, Circle K cites to *Raines v. Coastal Pacific Food Distributors, Inc.* (2018) 23 Cal.App.5th 667, 681 (*Raines*) for the proposition that statutory "penalties" are designed to punish a wrongdoer and do not require the existence of an injury, whereas "damages" are designed to be compensatory and require an injury to compensate.  We believe Circle K has the better argument.

Circle K is correct the statutory scheme of the FCRA uses both terms—damages and penalties—to describe potential relief available under the statute.  Specifically,

28.

section 1681n provides, in part: "Any person who willfully fails to comply with any requirement imposed under the subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—[¶] (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 …." (§ 1681n, subd. (a)(1)(A).)

Section 1681s reads, in part: "Except as otherwise provided …, in the event of a knowing violation, … , the Federal Trade Commission may commence a civil action to recover a civil penalty" up to "$2,500 per violation." (§ 1681s, subd. (a)(2)(A).)

" ' "Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning." ' " (*Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1352.) "We usually 'presume differences in language … convey differences in meaning.' " (*Wisconsin Central Ltd. v. U.S.* (2018) ___ U.S. ___, ___ [138 S.Ct. 2067, 2071, 201 L.Ed.2d 490]; *Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 [same].)

The term "damages" is not defined in the FCRA. "Statutory terms or words will be construed according to their ordinary, common meaning unless these are defined by the statute or the statutory context requires a different definition." (*Central States, Southeast and Southwest Areas Pension Fund v. Fulkerson* (7th Cir. 2001) 238 F.3d 891, 895; *Benson v. Kwikset Corp.* (2007) 152 Cal.App.4th 1254, 1279 ["a court's first step in determining legislative intent when construing a statute is to review the words used in the statute, giving the terms their plain and ordinary meaning."].)

Black's Law Dictionary defines the term damages as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." (Black's Law Dict. (11th ed. 2019).) The Cambridge Dictionary defines the term as "money that is paid to someone by a person or organization who was responsible for causing some injury or loss." (https://dictionary.cambridge.org/dictionary/english/damages.) Merriam-Webster

defines the term similarly, i.e., "compensation in money imposed by law for loss or injury." (https://www.merriam-webster.com/dictionary/damages.)

Black's Law Dictionary defines the term "penalty," as follows: "Punishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine; esp[ecially], a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)." (Black's Law Dict. (11th ed. 2019).) The Cambridge Dictionary defines the term, in relevant part, as "a punishment, or the usual punishment, for doing something that is against a law." (https://dictionary.cambridge.org/dictionary/english/penalty.) Merriam-Webster defines the term, in relevant part, as follows: "the suffering in person, rights, or property that is annexed by law or judicial decision to the commission of a crime or public offense." (https://www.merriam-webster.com/dictionary/penalty.)

The above definitions support Circle K's claim that the term damages connotes compensation for an injury and the term penalty connotes punishment for wrongdoing. As discussed below, both federal and state case law further support these interpretations of the terms.

In *Raines*, the court described the differences in the meanings of these terms, as follows: "[D]amages and civil penalties have different purposes …. Damages are intended to be compensatory, to make one whole. [Citation.] Accordingly, there must be an injury to compensate. On the other hand, 'Civil penalties, like punitive damages, are intended to punish the wrongdoer and to deter future misconduct.' [Citation.] An act may be wrongful and subject to civil penalties even if it does not result in injury." (*Raines*, *supra*, 23 Cal.App.5th at p. 681; *Goehring*, *supra*, 121 Cal.App.4th at p. 386 ["a penalty [is] any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him [or her] for a legal damage done him [or her] by the former,' " internal quotation marks omitted].)

30.

In *Thomas v. FTS USA, LLC* (E.D.Va. 2016) 193 F.Supp.3d 623 (*Thomas*), the court noted the purpose of the statutory damages provision in section 1681n(a) was to provide redress for "plaintiffs … who have suffered concrete harm, but may find it difficult to prove actual damages." (*Thomas*, *supra*, at p. 637; *Gambles v. Sterling Infosystems, Inc.* (S.D.N.Y. 2017) 234 F.Supp.3d 510, 523 (*Gambles*) ["The provision for statutory damages … reveals that Congress acknowledged that in some cases, damages from a reporting agency's violation of a subject's FCRA rights might be difficult or impossible to quantify or prove."].)  On the other hand, "civil penalties are designed to punish culpable individuals, deter future violations, and prevent the conduct's recurrence." (*New York v. United Parcel Service, Inc.* (2nd Cir. 2019) 942 F.3d 554, 599.)

Limon's citation to *Midwest Airlines* does not aid him.  The *Midwest Airlines* court expressly noted that "[t]he actual or statutory damages in subsection (a)(1) [of section 1681n] … are in the nature of compensatory damages." (*Midwest Airlines*, *supra*, 537 F.Supp.2d at p. 1168.)  By its very nature, the concept of compensatory damages requires some injury to compensate for.

Based on the above, we conclude the statutory damages provision is intended to compensate a plaintiff for injury.  It is designed to provide redress where damages are "difficult or impossible to quantify or prove." (*Gambles, supra,* 234 F.Supp.3d at p. 523.)  It is not intended to penalize a company for violation of the FCRA.

## B.        *The FCRA Does Not Confer Public Interest Standing On Limon*

Limon cites to *Weatherford* for the proposition that there is a " 'public interest' exception to the traditional rule that a party seeking a writ of mandate must possess a 'substantial beneficial interest' in the action." (See *Weatherford*, *supra*, 2 Cal.5th at pp. 1248–1249.)

As mentioned, *Weatherford* involved standing in the context of a taxpayer's right to sue in the public interest under Code of Civil Procedure section 526a which expressly

conferred standing on resident taxpayers to maintain an action to prevent "illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency[.]" (*Id.*, at subd. (a).)

This is not a situation where the statute at issue confers public interest standing upon Limon. The FCRA expressly confers authority upon federal and state agencies and officials—not private litigants—to vindicate the public's interest in ensuring compliance with the FCRA. (§ 1681s.) We discern no basis upon which to conclude the FCRA was intended to confer public interest standing upon a private litigant.

We conclude Limon does not have standing under the public interest doctrine to pursue his claims in California's courts. To have standing to pursue his claims, Limon must allege a concrete injury.

## VIII.  Limon Has Not Suffered A Sufficient Injury For Standing To Sue

Limon contends his interests in privacy and access to information were violated and the violations are sufficient to confer in him standing to bring suit. Limon further contends the trial court was required, but failed, to determine whether he had interests protected by the FCRA and whether those interests were violated. Limon states he "was not presented with all the required information in a clear manner to enable him to understand his rights and give informed consent for Circle K to procure his consumer report." He argues the release of liability caused injury to his "privacy interests because it prevents him from holding a third-party vendor accountable" for furnishing such information.

Circle K counters by contending Limon suffered no "injury to his privacy rights because he testified that: (1) he was willing to submit to a background check; (2) he knew by checking a box on Circle K's employment application he was informing Circle K that he was ok with it procuring his background check; and (3) he would have signed any indisputably compliant FCRA form consenting to his background check."

32.

Circle K further argues Limon did not suffer an informational injury because Limon obtained "all the information required by the FCRA," and the alleged "confusion" suffered by Limon is, by itself, insufficient to constitute injury because there were no " 'downstream consequence[s]' " flowing from the alleged confusion. Circle K relies, in part, on Limon's admission at deposition that he would have authorized Circle K to run a consumer report on him even if he had received an "indisputably compliant FCRA form," and contends the confusion suffered by Limon was related only to the liability release contained in the form which is not an FCRA-protected interest.[12]

As discussed in the preceding section, to assess a plaintiff's standing to pursue claims in California courts, one must consider whether the plaintiff suffered an injury— i.e. an " 'invasion of [his or her] legally protected interests' " and whether it is " 'sufficient to afford them an interest in pursuing their action vigorously.' " (*Angelucci*, *supra*, 41 Cal.4th at p. 175.) The latter consideration is met where the injury is " ' "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." ' " (*Associated Builders*, *supra*, 21 Cal.4th at pp. 361–362; *Luna Crest*, *supra*, 245 Cal.App.4th at p. 883.)

By enacting the FCRA, Congress sought to protect, among other things, certain interests of job applicants and employees. In that regard, Congress sought to "ensure fair and accurate credit reporting" and "protect consumer privacy." (*Safeco, supra,* 551 U.S. at p. 52; § 1681, subd. (a)(1) & (4), (b).) In addition, Congress sought to provide job applicants with (1) the knowledge their prospective employer "may obtain the applicant's consumer report for employment purposes"; (2) the knowledge they can withhold their authorization; and (3) "an opportunity to warn a prospective employer of errors" in the

---

[12] This testimony is based on the excerpts referred to footnote 4, paragraph 3.c., *ante*.

consumer report before an adverse hiring decision is made based on incorrect information. (*Syed*, *supra*, 853 F.3d at pp. 496–497; § 1681b, subd. (b)(2)(A).)

Here, Limon does not allege he did not receive a copy of the consumer report that Circle K obtained. Limon does not allege the consumer report obtained by Circle K contains any defamatory content or other per se injurious content. He does not allege the consumer report contained false or inaccurate information. Similarly, there are no allegations of any exposure to a material risk of future harm, imminent or substantial. (See *TransUnion LLC. v. Ramirez* (2021) 2021 WL 2599472, *2, *13 [141 S. Ct 2190, 210 L.Ed.2d 568 (*TransUnion*).) Thus, there was no injury to Limon's protected interest in ensuring fair and accurate credit (or background) reporting. Similarly, there was no injury associated with any adverse employment decision based on false or inaccurate reporting. With regard to the release of liability contained in Circle K's consent form, we note there are no allegations to suggest that any harm has resulted from the release. Limon admits he was hired by Circle K, and does not allege any adverse employment decision based upon information contained in the consumer report. Limon does not allege any facts, or cite to any law, upon which to conclude that he had any viable cause of action against the company or companies performing his background check that he relinquished by signing the release.

We also note that, while there was some extraneous language in Circle K's consent form, that extraneous language was not extensive, and the disclosure notices therein otherwise appear to comply with the FCRA.[13] There are no allegations to the contrary. At deposition, Limon confirmed he authorized Circle K to run a background

---

[13] In his opening brief, Limon references and cites to the actual consent form he signed which is part of the record on appeal. We may appropriately "take into account briefs and arguments, which are reliable indications of a party's position on the facts …." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 93 (conc. & dis. opn. of Thompson, J.); *People v. Cox* (1990) 221 Cal.App.3d 980, 993.)

check on him—i.e., he checked "yes" for the question: "Would you be willing to submit to a background check prior to being hired?" By doing so, Limon undoubtedly understood he was advising Circle K he was willing to have it conduct a background check on him prior to being hired. There are no allegations to the contrary.[14] Thus, Limon's protected interest in being advised that Circle K would be running a background check on him prior to deciding whether to hire him was fully satisfied and he knew he could withhold his authorization by refusing to check the box by which he gave such authorization.

Notably, in the federal action, Limon was provided an opportunity to supplement the record in connection with the federal district court's reconsideration to show "he would not have signed Circle K's FCRA consent form had it not contained a liability waiver." Limon filed a response to the court's invitation which read: "[Limon] does not believe that it will be possible to supplement the record with evidence sufficient to establish Article III standing under the standard that the Court has adopted."

Based on the above, we conclude Limon has not alleged a concrete or particularized injury to his privacy interests sufficient to afford him an interest in pursuing his claims vigorously. (See *Angelucci*, *supra*, 41 Cal.4th at p. 175; *Associated*

---

[14] In his reply brief, Limon contends he "was unaware that by signing [Circle K's consent form] he was consenting to the background check." In support of this contention, Limon cites to the federal court's ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT. The federal court purportedly relies on excerpts from Limon's deposition testimony and a declaration from Limon. However, the record on appeal does not include citations to any underlying evidentiary support for the statement and, aside from the order mentioned above, we have found none. Thus, Limon's contention is unavailing for several reasons: (1) Limon is responsible for providing this court with an adequate record to support his contentions on appeal. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) He has not done so; and (2) We are unable to rely on the federal court's order because (a) the portion relied upon was vacated by the federal court's order on reconsideration; and (b) the statement is hearsay and we are unable to take judicial notice of the factual contentions therein (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564).

*Builders*, *supra*, 21 Cal.4th at pp. 361–362; *Luna Crest*, *supra*, 245 Cal.App.4th at p. 883.)

We also reject Limon's claims he suffered "informational injury" sufficient to confer upon him standing to maintain his action. "Informational injury that causes no adverse effects"—e.g., where required information is provided but is provided in the wrong format as in the present case—has been held insufficient to satisfy Article III standing. (*TransUnion*, *supra*, 2021 WL 2599472, *15 [141 S.Ct. 2190, 2214.) California case law has held similarly. (*Boorstein*, *supra*, 222 Cal.App.4th at pp. 472– 473 [noting a lack of California case law recognizing "informational injury" and holding "informational injury" is not cognizable under Civil Code, section 1798.83 et seq.];[15] *Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1142–1143 [deprivation of information, by itself, is not a cognizable injury under former Labor Code section 226].)[16]

 Limon has failed to allege any concrete injury in connection with his claim of informational injury. Thus, his alleged informational injury is insufficient under California law to confer upon him standing to pursue his claim in state court. We

---

[15] Under subdivision (a) of Civil Code section 1798.83, a business that supplies personal information of its customer to third parties for direct marketing purposes must, upon the request of the customer, supply specified information to the customer concerning the disclosures made and the recipient(s) of those disclosures.

[16] Labor Code section 226 generally requires employers to include specific information on wage statements concerning gross wages earned, total hours worked, deductions from earnings, the pay period encompassed by the wage statement, and other information. (*Id.* at subd. (a).) However, Labor Code section 226 now statutorily recognizes a type of informational injury, noting that providing incomplete or inaccurate wage statement information to an employee is only a cognizable injury for purposes of Labor Code section 226 if the "employee cannot promptly and easily determine [the required information] from the wage statement" without reference to other documents or information. (Lab. Code § 226, subds. (e)(2)(B) & (C).)

conclude, under California law, that an informational injury that causes no adverse effect is insufficient to confer standing upon a private litigant to sue under the FCRA.

The record in this case establishes Limon did not allege a sufficient injury to his legally protected interests under the FCRA to confer standing upon him.

**DISPOSITION**

The judgment of dismissal in case No. F082929 is affirmed. The motion to dismiss in case No. F082289 is granted. Circle K is entitled to its costs on appeal.

SNAUFFER, J.

WE CONCUR:

LEVY, ACTING P. J.

SMITH, J.